CHRISTOPHER L. BLANK (SBN 115450)
CHRISTOPHER L. BLANK, ATTORNEY AT LAW, PC
4675 MacArthur Court, Suite 550
Newport Beach, CA  92660
Telephone:   (949) 250-4600
Facsimile:    (949) 250-4604
Email:          clblank@pacbell.net

Attorney for Plaintiff, Harold Pemstein

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In Re | CASE NO. 2:12-bk-15900RK |
| MARTIN PEMSTEIN, DIANA PEMSTEIN, | **Chapter 11** |
| Debtors. | |
| HAROLD PEMSTEIN, | ADV. NO. 2:12-ap-01291RK |
| Plaintiff, | **PLAINTIFF HAROLD PEMSTEIN'S TRIAL BRIEF** |
| Vs. | |
| MARTIN PEMSTEIN, DIANA PEMSTEIN, | **DATE:** May 29, 2014<br>**TIME:** 8:00 A.M.<br>**COURTRM:** 1675 |
| Defendants. | |

**TO THE COURT, ALL INTERESTED PARTIES, AND THEIR RESPECTIVE ATTORNEY(S) OF RECORD:**

Plaintiff, Harold Pemstein ("Harold") submits his trial brief in defense of the above referenced adversary action as follows:

///

///

///

///

///

**TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION……………………………………………………………….   2

II.  ARGUMENT……………………………………………………………….   4

   A.   **The Law of Defalcation According to *Bullock*** ……………………………   4

      1.   **Factual Context** ……………………………………………………..   5

      2.   **Defalcation Background** …………………………………………….   6

      3.   ***Bullock* Holding** ...........................................................................   7

      4.   **Securities Law Scienter Requirement** ……………………………..   8

   B.   **Bankruptcy Cases Applying The Higher Standard Required by Bullock** ……………………………………………………..   9

III. CONCLUSION…………………………………………………………..…   11

# **TABLE OF AUTHORITIES**

**CASES**                                                                                           **PAGE(S)**

*Bullock v. BankChampaign, N.A.* 133 S.Ct. 1754 (2013)………………………. 3,5,6,7,8,9,10,11

*Central Hanover Bank & Trust v. Herbst,* 93 F.2d 510………………………….......    6, 7

*FDIC v. Gaubert,* 149 B.R. 819…………………………………………………..    10

*In Re Baylis,* 313 F.3d 9………………………………………………………….. 7, 9, 10

*In Re Correia-Sasser,* 2:10-BK-17877 RJH, 2011 WL 3515473 (Bankr. D. Ariz)…… 10,11

*In Re Fahey,* 494 B.R. 16……………………………………………………………    11

*In Re Frankel,* 77 B.R. 401……………………………………………………….    11

*In Re Harwood,* 637 F.3d 615…………………………………………………….    7

*In Re Hyman*, 502 F.3d 61……………………………………………………….. 7, 8

*In Re Moreno,* 892 F.2d 417……………………………………………………...    10

*In Re Pemstein,* 492 B.R. 274……………………………………………………    4

*In Re Patel,* 565 F.3d 963…………………………………………………………    7

*Hollinger v. Titan Capital Corp.,*914 F.2d 1564……………………………………….    8

*Meinhard v. Salmon,* 249 N.Y. 458……………………………………………….    2

*Meyer v. Rigdon,* 36 F.3d 1375……………………………………………………    7

*Novak v. Kasaks,* 216 F.3d 300……………………………………………………. 8, 9

*Sanders v. John Nuveen & Co., Inc.,* 554 F.2d 790……………………………………    8

*Storie v. Storie,* 216 B.R. 283……………………………………………………..    10

*Sundstrand Corp. v. Sun Chem. Corp.,* 553 F.2d 1033……………………………………    8

*Wendt v. Fischer,* 243 N.Y. 439…………………………………………………..…    2

**CODE SECTIONS**

11 U.S.C. Section 523(a)(4)……………………………………………………… 3, 4, 5, 6, 10, 11

Cal Corp. Code §16404(c)………………………………………………………    4

**OTHERS**

Zvi S. Rosen, *Discharging Fiduciary Debts,* 87 Am. Bankr. L.J. 51………………    7

2A. A. Scott, The Law of Trusts §170……………………………………………….    9

**I.**

**INTRODUCTION**

"Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. *Wendt v. Fischer*, 243 N. Y. 439, 444, 154 N. E. 303. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court.

*Meinhard v. Salmon*, 249 N.Y. 458, 463-64, 164 N.E. 545, 546 (1928)(Opinion by Chief Justice Benjamin Cardozo).

Any eight-year-old knows that when dad brings home a pizza for dinner and gives it to Johnny, telling Johnny to share it with his siblings, that Johnny has done something wrong if he doesn't give his brother a piece. Johnny has done something wrong whether he eats his brother's piece himself, or simply throws it in the trash. By Judgment entered January 5, 2010, the California Superior Court, Judge Polos presiding, found Martin Pemstein guilty of failing to give his brother Harold a proper piece of their jointly owned pie. Martin was found guilty of failing to pay Harold his share of the rent from their joint enterprise, HMS Properties.

That Martin was a fiduciary with respect to Martin is not in dispute. That the judgment represents a debt that arose from that fiduciary relationship is not in dispute. The amount of damage caused by Martin's failure to pay Harold his share of the rent is not in dispute. The related doctrines of Law of the Case and the Rule of Mandate dictated that the issues previously decided by this court that were not overturned by the Bankruptcy Panel cannot now be

PLAINTIFF HAROLD PEMSTEIN'S TRIAL BRIEF

2

reexamined. This court is bound by the determinations made by the Bankruptcy Appellate Panel and must apply the law and facts as they determined them to be. *See, Gonzales v. U.S. Dept. of Homeland Security,* 659 F.3d 930, 939 (9th Cir. 2001) and *U.S. v. Jingles,* 702 F.3d 494, 499 (9th Cir. 2012). The only thing that is presently in dispute is whether Martin's failure amounts to a "defalcation" as that term is used in 11 U.S.C. Section 523(a)(4).

Prior to the U.S. Supreme Court's decision in *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754 (2013), in the 9th Circuit, even an innocent breach of fiduciary duty was cause for declaring the fiduciary's debt non-dischargeable. However, *Bullock* holds that some level of culpable knowledge is necessarily a part of the definition of defalcation. Proof of *scienter* is required. "[K]nowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior" is required. *Id.* at 1759. Looking at it from the other direction, an innocent explanation, or even an explanation that shows common negligence may get the fiduciary off the hook. But there is no innocent explanation for Martin's failure to pay Harold his share the rent he deserved from HMS Properties. And there is no common negligence explanation for Martin's failure to pay Harold his share of the rent, and Martin does not even attempt to provide an explanation showing his innocence or negligence. Martin's explanation is that he was "released" from his obligation to give Harold his slice of pizza. Martin claims that a settlement in the bankruptcy proceedings of HMS and its tenant Pemma Corporation (both of which were owned 50/50 by Martin and Harold, but controlled by Martin at the relevant times) reduced any claim for unpaid rent to $45,000.00. Not only is that claim specious, but it demonstrates that Martin knows what he did was wrong. "But mom said I didn't have to share the pizza with my brother." How far do you think that is going to get Johnny as he tries to avoid his father's discipline?

Just as any eight year old knows that it is wrong to do your brother out of his slice of pizza, Martin knew it was wrong to do Harold out of his share of the rent. If he didn't know that was simply wrong, then he was grossly reckless about adhering to the requirement to demonstrate the "punctilio of an honor the most sensitive." His actions did not demonstrate adherence to "something stricter than the morals of the market place." His actions demonstrated

PLAINTIFF HAROLD PEMSTEIN'S TRIAL BRIEF

3

at least callous indifference to the damage he caused Harold.

But what exactly did Martin do regarding the rents of HMS? What exactly was the 2010 based on? These are the questions the Court posed at the last status conference in this case. The answer lies in **Plaintiff's Trial Exhibit 107**. **Exhibit 107** is the Plaintiff's Brief in Lieu of Closing Argument which was submitted by Harold's attorney to Judge Polos after the conclusion of testimony in the State Court trial. It will be submitted not to prove any of the facts stated in the brief. That would be hearsay. Rather, it will be submitted to explain the basis for Judge Polos's judgment.

In the closing brief, Harold argued that the State Court's appointed expert Jamie Holmes had concluded that HMS had actual profits from rental income of **$384,124.00** during the relevant period, and Harold's unpaid share of that income was **$192,062.00**. In the closing brief, Harold also argued that expert witness David Hahn concluded that Martin did not collect a market rate of rent from the tenant Pemma Corporation, which was controlled by Martin. Hahn concluded that had Martin charged Pemma a market rate of rent during the relevant period, HMS would have earned an additional **$207,618.00** in profits. Harold's share of that forgone profit was **$103,809.00**. Together the undistributed actual profits and the uncollected reasonable rental value totaled exactly **$295,871.00**. *See*, **Exhibit 107** page 3, line 19 to page 6, line 19.

And what was the amount of lost rent damages Judge Polos awarded in the 2010 judgment? Exactly **$295,871.00!** And what does that judgment say the damages were for? It says the damages were awarded because "Martin Pemstein breached his duty of due care to Harold Pemstein in the collection of rent on behalf of HMS Properties." Furthermore, the Bankruptcy Appellate Panel has told us: "Under California law, this finding necessarily means that the state court found that Martin had engaged in 'grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law' while acting as a trustee over partnership assets. Cal. Corp. Code § 16404(c). And, as specifically stated in the 2010 Judgment, that conduct related to the 'collection of rent on behalf of' the partnership." *In re Pemstein*, 492 B.R. 274, 278 (B.A.P. 9th Cir. 2013). For these reasons, the judgment debt that Martin owes Harold is non-dischargeable as a defalcation by a fiduciary under Section 523(a)(4).

**II.**

**ARGUMENT**

**A. The Law of Defalcation According to *Bullock*.**

In *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754 (2013), the Supreme Court refined the legal term defalcation as it applies to 11 U.S.C. § 523(a)(4) of the Bankruptcy Code. Specifically, the Court addressed whether a culpable state of mind is required for a debtor's actions to qualify as defalcation, thus excluding the resulting debts from discharge. In a unanimous decision the Court answered this question affirmatively and determined that "defalcation," requires an intentional wrong, recklessness, bad faith, moral turpitude, or other immoral or criminal conduct. *Id*. at 1759.

**1.     Factual Context.**

The factual context is important to understanding the basis for the Court's opinion in *Bullock.* In 1978, Randy Bullock's father established a trust for the benefit of his five children, naming his eldest child, Randy Bullock, as the trustee. *Id*. at 1757. The terms of the trust allowed Mr. Bullock to borrow funds from the insurer against the value of the trust, which he did on three occasions. *Id*. The first, at his father's request, was to borrow money in order for his mother to pay off a debt to the father's business. *Id*. The second was to purchase certificates of deposit to allow him and his mother to purchase a mill. The third was to buy real property for him and his mother. *Id*.

Despite paying the borrowed funds back to the trust with the appropriate interest, his siblings brought suit against Mr. Bullock. *Id*. The state court explained that Mr. Bullock "does not appear to have had a malicious motive in borrowing funds from the trust but nonetheless was clearly involved in self-dealing." *Id*. (internal quotation marks omitted). The court held that Mr. Bullock "committed a breach of fiduciary duty" and "ordered [him] to pay the trust the benefits he received from his breaches." *Id.* (internal quotation marks omitted). Mr. Bullock, unable to raise the funds necessary to make the court ordered payments to the trust, filed for bankruptcy. *Id.*

The state court imposed constructive trust on Mr. Bullock's interest in the mill

PLAINTIFF HAROLD PEMSTEIN'S TRIAL BRIEF

5

and the original trust making BankChampaign, N.A. ("BankChampaign") the trustee. *Id.* BankChampaign opposed Mr. Bullock's bankruptcy action and argued that the state court judgment against Mr. Bullock was non-dischargeable. The Bankruptcy Court agreed and granted BankChampaign's Motion for Summary Judgment. The Court ruled that the "debts fell within § 523(a)(4)'s exception 'as a debt for defalcation while acting in a fiduciary capacity.' Hence, they were not dischargeable.'" *Id.* at 1757-58 (internal citations omitted).

On appeal, the district court and the United States Court of Appeals for the Eleventh Circuit affirmed. *Id.* at 1166. The Supreme Court granted certiorari to determine whether defalcation applies without a specific finding of ill intent. *Bullock*, 133 S. Ct. at 1758.

### 2. Defalcation Background

Section 523(a)(4) states that a debt is non-dischargeable if it is a product of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Defalcation does not have a clear dictionary definition. *See, Bullock v. BankChampaign, N.A.,* 133 S. Ct. 1754, 1758-59 (2013) (discussing the myriad definitions of defalcation). Case law, however, provides one. For example, in *Central Hanover Bank & Trust v. Herbst*, 93 F.2d 510, 511 (2d Cir. 1937) the debtor was a receiver of a parcel of real property in a foreclosure suit. The court granted him a supplemental allowance of $5,674. *Id.* Before the time for appeal was over and without inquiring from the plaintiff whether he intended to appeal, Herbst withdrew the money and spent it. *Id.* Eventually, the case was appealed and the appellate court reversed Herbst's supplemental allowance. *Id.* Unable to pay the allowance back, Herbst declared bankruptcy and his surety sought to prevent the debt from being discharged for defalcation while acting as an officer or in any fiduciary capacity. *Id.* Writing for the Second Circuit, Judge Learned Hand stated,

> "[i]n the case at bar the bankrupt had not been entirely innocent—not, for instance like the victim of an employee—though possibly one may acquit him of deliberate wrongdoing. A judge had awarded him the money, and prima facie he was entitled to it; but he knew, or if he did not know, he was charged with notice (having held himself out as competent to be an officer of the court), that the order would not protect him if it were

reversed; and that it might be reversed until the time to appeal had expired. He made no effort to learn from the plaintiff whether it meant to appeal, and he did not wait until it could no longer do so; he took his chances."

*Id.* at 512.

The definition of defalcation is clear in *Herbst*. What became problematic was the scienter requirement. A three-way split occurred within the circuits. The Fourth, Eighth, and Ninth Circuits had a relatively low standard requiring no more than mere negligence which some have called a strict liability standard. *See,* Zvi S. Rosen, *Discharging Fiduciary Debts*, 87 Am. Bankr. L.J. 51, 81-82 (2013) (discussing *In re Lewis*, 97 F.3d 1182, 1186 (9th Cir. 1996) adopting a strict liability approach). The Fifth, Sixth, and Seventh Circuits required a higher level of an "objectively reckless" standard. *See, In re Harwood*, 637 F.3d 615, 619 (5th Cir. 2011) (defalcation is a willful neglect of a duty, which does not require actual intent; it is essentially a recklessness standard); *In re Patel*, 565 F.3d 963, 970, 51 (6th Cir. 2009) (fiduciary must be shown to have been "objectively reckless"); *Meyer v. Rigdon*, 36 F.3d 1375, 1385, (7th Cir. 1994) (defalcation requires more than a showing of negligence). The First and Second Circuits adopted the highest standard of "extreme recklessness." See *In re Baylis*, 313 F.3d 9, 20, 40 (1st Cir. 2002) ("defalcation requires something close to a showing of extreme recklessness"); *In re Hyman*, 502 F.3d 61, 68, (2d Cir. 2007) (defalcation "requires a showing of conscious misbehavior or extreme recklessness— a showing akin to the showing required for scienter in the securities law context").

**3.    *Bullock* Holding**

The Supreme Court resolved the three-way split among the circuits regarding the state of mind requirement for defalcation. The Court analogized to the Model Penal Code to define the scienter requirement. *Bullock*, 133 S. Ct. at 1759-60. The question focuses on whether the fiduciary knows that his conduct will violate the applicable standard of care. *Id* at 1759. The Court defined this mental state as "involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id.* at 1757.  This includes "not only

PLAINTIFF HAROLD PEMSTEIN'S TRIAL BRIEF

7

conduct that the fiduciary knows to be improper but also reckless conduct, . . ." *Id.* at 1759. Thus, the Court stated that "[w]here actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that [the fiduciary's] conduct will turn out to violate a fiduciary duty." *Id.* at 1759-60 (quoting ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985)). Where the conduct is so clearly wrong that it constitutes a "gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation," *Bullock*, 133 S. Ct. at 1760 (quoting the Model Penal Code § 2.02(2)(c), at 226 (emphasis in original), we can conclude that the fiduciary duty was consciously disregarded, and knowledge of the violation may be fairly imputed.

For *Bullock* this meant the Eleventh Circuit's objective recklessness standard was not appropriate. The standard is a subjective one, not objective. The Court remanded to the lower courts to decide if *Bullock* met the new standard.

One of the benefits that Court noted was "the virtue of ease of application since the courts and litigants have reference to a robust body of securities law examining what these terms mean." *Bullock*, 133 S. Ct. at 1761 (quoting *In re Hyman*, 502 F.3d 61, 69 (2d Cir. 2007)). How helpful that robust body of law might be in this context is subject to reasonable doubt, but for the sake of completeness it is discussed below.

**4.    Securities Law Scienter Requirement**

Recklessness is conduct or omissions that are highly unreasonable and constitutes an extreme departure from standards of ordinary care beyond that of mere negligence. See *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1045 (7th Cir. 1977) (finding material misrepresentations of projected earnings and omissions, including not disclosing a report questioning accounting practices, reckless); see also *Sanders v. John Nuveen & Co., Inc.*, 554 F.2d 790, 793 (7th Cir. 1977) (noting that recklessness "comes closer to being a lesser form of intent than merely a greater degree of ordinary negligence"); *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1570 (9th Cir. 1990) (adopting *Sunstrand's* definition of recklessness). The danger of such conduct must either be known to the defendant or "so obvious that the defendant

PLAINTIFF HAROLD PEMSTEIN'S TRIAL BRIEF

8

must have been aware of it." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) (internal quotation marks omitted). The standard is met when a defendant fails "to review or check information that they had a duty to monitor . . . ." *Id.*

Securities fraud often involves misrepresentations or omissions that a plaintiff detrimentally relies upon. For example, in *Novak*, the defendants made misrepresentations that China would be an important new source of revenue for its women's clothing to investors, even though the defendant omitted that trade restrictions on Chinese imports would have made that highly unlikely. *Id.* at 308.

Although the language of securities fraud is similar to the language endorsed in *Bullock*, the application is necessarily different. The *Bullock* Court noted that defalcation must be distinct from embezzlement, larceny, and fraud. *Bullock*, 133 S. Ct. at 1760. "[E]mbezzlement requires conversion, . . . larceny requires taking and carrying away another's property[,] and fraud typically requires a false statement or omission." *Id.* at 1760 (internal quotations and citations omitted). Defalcation, on the other hand, can encompass a breach of fiduciary obligation that may not include any of these elements. *Id.* The more appropriate analysis then is to consider circuits that endorsed the higher scienter requirements and applied a culpable state of mind requirement similar to the one in *Bullock*.

**B.    Bankruptcy Cases Applying the Higher Standard Required by *Bullock*.**

The *Bullock* Court noted that the standard is similar to the one in *In re Baylis*, 313 F.3d 9 (1st Cir. 2002). *Id.* at 1761. In *Baylis*, the trustee was responsible for a trust containing eight properties in Massachusetts. *Baylis*, 313 F.3d at 13. The trustee signed a Purchase and Sale agreement with one party, and then proposed selling the property to another party. *Id.* at 14. The first party sued the trustee for fraud. *Id.* at 15. The trustee used the trust money to defend himself in court and pay the settlement. *Id.* The beneficiaries in turn sued the trustee for defalcation of a fiduciary duty. *Id.* at 20.

The court stated that the trustee owed the "most fundamental duty . . . the duty of a trustee to administer the trust solely in the interest of the beneficiaries." *Id.* (quoting 2A A. Scott, The Law of Trusts § 170 (W.F. Fratcher ed., 4th ed. 2001)). "Defalcation may be presumed from

PLAINTIFF HAROLD PEMSTEIN'S TRIAL BRIEF
9

breach of the duty of loyalty, the duty not to act in the fiduciary's own interest when that interest comes or may come into conflict with the beneficiaries' interest." *Id.* at 20.

A trustee occupies a position in which the courts have fixed a very high and very strict standard for his conduct whenever his personal interest comes or may come into conflict with his duty to his beneficiaries. As long as he is not acting in his own interest the standard fixed for his behavior is only that of a reasonable degree of care, skill, and caution. But when the trustee acts in his own interest in connection with the performance of his duties as trustee, the standard of behavior becomes more rigorous. In such a case his interest must yield to that of the beneficiaries. 2A *id*. § 170.25.  "As with the other fault-based exceptions, fault may be presumed from the circumstances, here a violation of the duty of loyalty." *Id.* at 20-21.

Courts have extensively cited *Baylis* for the proposition that a breach of duty or loyalty amounts to defalcation. See *In re Moreno*, 892 F.2d 417, 421 (5th Cir. 1990) (finding defalcation where a fiduciary violated his "responsibility not to lend [his principal's] money to himself or corporations controlled by him on less than an arms-length basis" and noting that a "defalcation is a willful neglect of duty"); *Storie v. Storie*, 216 B.R. 283, 288 (10th Cir. BAP 1997) ("We conclude that 'defalcation' under section 523(a)(4) is a fiduciary-debtor's failure to account for funds that have been entrusted to it due to any breach of a fiduciary duty.") (Emphasis added); *FDIC v. Gaubert*, 149 B.R. 819, 827–29 (Bankr. E.D. Tex. 1992) (defalcation found to have occurred where the debtor "willfully violated his fiduciary duties of care and loyalty").

*In re Correia-Sasser* 2:10-BK-17877-RJH, 2011 WL 3515473 (Bankr. D. Ariz. Aug. 10, 2011) is an Arizona case that discusses *Bayliss* but was decided before *Bullock*.  The court stated that "[t]he Defendant's breach of her fiduciary duty constitutes defalcation under 11 U.S.C. § 523(a)(4) regardless of whether or not the breach was innocent."  The court analyzed *Baylis* as well other leading cases and decided:

> "[w]hether Ms. Correia breached her duty as Trustee is not for this court
> to decide. The doctrine of issue preclusion bars this court from
> determining if a breach of duty occurred because this issue was already
> adjudicated in California. The California court heard evidence and decided

PLAINTIFF HAROLD PEMSTEIN'S TRIAL BRIEF

10

that Ms. Correia did indeed breach her duty as Trustee. No further inquiry into this issue is necessary or appropriate."

*In re Correia-Sasser*, at *4.

More recently, *In re Fahey,* 494 B.R. 16 (Bankr. Mass. 2013) held that a judgment against the president of a corporation for failure to cause the corporation to pay pension contributions to a union pension fund was non-dischargeable under Section 523(a)(4). The president argued that he was not a fiduciary with respect to the pension plan, but that argument was rejected by the 1st Circuit BAP. On remand, the trial court found that because the president caused the corporation to pay other corporate debts in preference to the pension obligation, he had defalcated.

Also useful to our analysis is *In re Frankel,* 77 B.R. 401 (Bankr. W.D.N.Y.,1987). *Frankel* is positively cited by the Supreme Court in *Bullock* as an example of a case that applies the correct standard of culpability. *Frankel* involved brothers in business together. The brother in control of the company filed bankruptcies for himself and the company. He was found to have wasted a corporate asset, and harmed his brother, by selling inventory to the holder of an administrative claim in the company's bankruptcy on credit. The administrative creditor offset the claim against the price for the inventory. This harmed the brother who was not in charge of running the company. The court determined the debt was non-dischargeable because:

> "To assert that a person of ordinary prudence and intelligence, armed with the Debtor's knowledge of commercial practice, would have sold secured inventory to Eisenberg on credit strains credulity. The Debtor knew, or should have known, that by making a credit sale to Eisenberg as the affairs of the Corporation were winding down he would place the Plaintiff's security at risk. This he should not have done." *Id.* at 404.

### III.
### CONCLUSION

Turning back to the facts of *Bullock* and comparing them to our facts, it is important to realize that Mr. Bullock's alleged breach of fiduciary duty did not cause **actual** damage to the

beneficiaries of the trust.  He borrowed against the trust assets and repaid the loans with interest.  In our case, Martin was found to have cause **actual** damages to Harold to the tune of $300,000.00 plus interest.  *Bullock* is like borrowing your brother's lawnmower without asking permission, but returning it to him unscathed.  If you borrow your brother's lawnmower without permission, perhaps you should cough up the profits you earned mowing your neighbor's lawn with it, but you might be forgiven for not thinking of the breach as morally wrong.  But when you have an obligation to give your brother a piece of pizza and you don't share, there is no excuse for your failure to share, AND YOU KNOW IT!

DATED:      May 22, 2014                    /s/ Christopher L. Blank
                                            CHRISTOPHER L. BLANK, Attorney for
                                            Plaintiff, Harold Pemstein

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**4675 MacArthur Court, Suite 550, Newport Beach, CA 92660.**

A true and correct copy of the foregoing document entitled (*specify*): **PLAINTIFF HAROLD PEMSTEIN'S TRIAL BRIEF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.
On **May 21, 2014,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Christopher L Blank on behalf of Plaintiff Harold Pemstein; clblank@pacbell.net
United States Trustee (SA); ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **May 22, 2014,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

MARTIN PEMSTEIN, Defendant Pro Se
38 Calle Aragon, Unit F
Laguna Woods, CA 92637

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, and FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 22, 2014**, I served or caused to be served on the following persons and/or entities by personal delivery, **overnight mail service**, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Robert Kwan
U.S. Bankruptcy Court, Central District (LA)
255 East Temple Street, Rm. 1682
Los Angeles, CA 90012
**VIA FEDERAL EXPRESS**

```
Martin Pemstein, Defendant Pro Se
 Via Email - mrcarguy@sbcglobal.net
```

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 22, 2014 | DELORES M JOHNSON | /S/ DELORES M JOHNSON |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*  **F 9013-3.1.PROOF.SERVICE**